UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINA K. RUIZ,<br><br>        Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.  1:20-cv-01192-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO AFFIRM THE COMMISSIONER OF SOCIAL SECURITY[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No.  17)<br><br> ORDER TO ASSIGN TO A DISTRICT JUDGE |

Plaintiff Kristina K. Ruiz, proceeding pro se, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income and disability insurance benefits pursuant to the Social Security Act. (Doc. No. 1). This matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 17, 20). For the reasons stated, the undersigned RECOMMENDS that the Commissioner's decision be affirmed.

**I. JURISIDICTION**

Plaintiff filed for supplemental security income and disability insurance benefits on

---

[1] This matter is submitted to the district court by Findings and Recommendations because both parties did not consent to the jurisdiction of the magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

December 7, 2016, alleging an onset date of February 2, 2016. (Doc. No. 11-21 ("AR") at 253, 256). Benefits were initially denied and upon reconsideration. (Doc. No. 11-5 at 4-16). Plaintiff appeared for a hearing before the administrative law judge, Christina A. Cooke, ("ALJ") on March 5, 2019, with the assistance of a non-attorney representative, and testified during the hearing. (Doc. No. 11-3 at 33-56). The ALJ ultimately denied both social security income and disability benefits. (Doc. No. 11-3 at 16-32). The Appeals Council denied review. (Doc. No. 11-3 at 2-7). The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of this case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of the Plaintiff and the Commissioner. Only the most pertinent facts are summarized.

Plaintiff was 49 years old at the time she filed for disability and supplemental income benefits and 51 at the time of the hearing. (Doc. No. 11-3 at 36). Plaintiff has a twelfth-grade education. (*Id.* at 37). Prior jobs included leasing agent, banquet server, and a marketing representative for a credit reporting agency. (*Id.* at 39-40). During the hearing, Plaintiff testified about a June 2016 vehicle-roll-over car accident from which she suffered a broken neck in three places. (*Id.* at 43). At the time of the hearing, Plaintiff testified she still experienced limited range of motion in her neck (couldn't move her neck back and forth or up and down) and experienced headaches daily. (*Id.* at 43). Plaintiff testified that it's her neck that prohibits her from driving because she cannot look over her shoulder but acknowledged that one doctor found she did have full range of motion in her neck. (*Id.* at 45). Additionally, Plaintiff testified to blurry vision or "squiggly lines" in her left eye following the accident that did not improve like her right eye did. (*Id.* at 46). She attributed her difficulty sleeping and side-effects from medication as reasons why she cannot work. (*Id.* at 47).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§

404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.  ALJ'S FINDINGS

At the outset, considering Plaintiff sought disability and disability insurance benefits, the ALJ first had to determine whether Plaintiff's earning records acquired sufficient quarters of coverage to remain insured through December 31, 2017. (Doc. No. 11-3 at 16, 36). Specifically, the ALJ noted that Plaintiff would have to show disability on or before December 31, 2017 in order to be entitled to a period of disability and disability insurance benefits. (*Id.*).

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 2, 2016, the alleged onset date. (Id. at 18). At step two, the ALJ determined Plaintiff has the following severe impairments: loss of vision in the left eye; congestive heart failure; diabetes; mellitus, history of multiple neck fractures at C1, C2, C3, and C7; traumatic brain injury; and an anxiety disorder. (*Id.*).

As to step three, the ALJ found the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impartments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §404.1520(d), 404.1525, and 404.1526,

416.920(d), 416.925, and 416.926. (*Id*. at 19). Turning to the residual functional capacity ("RFC"), the ALJ determined Plaintiff could:

> [P]erform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Claimant is able to sit for 6 out of 8 hours; and she can stand and walk for 6 out of 8 hours. Claimant is able to lift, carry, push, or pull 10 pounds frequently and up to 20 pounds occasionally. Claimant should never lift, carry, push, pull or reach about shoulder level with bilateral extremities. Claimant should never climb ladders, ropes, or scaffolding; kneel; crouch; or crawl. She can occasionally climb stairs or ramps and stoop. Due to loss of vision in the left eye, claimant should never have duties that require binocular vision. Specifically clamant should never have duties that require near acuity, far acuity, depth perception, or color discrimination with the left eye. She can occasionally read and use a computer in the course of her job duties. Claimant should never be exposed to hazards, such as dangerous machinery and unprotected heights.
>
> Claimant must have duties that are simple, repetitive, and routine. She should never be expected to exercise independent judgment regarding the nature of her job duties. Her duties must be consistently the same with little or no change. Claimant is able to concentrate and persist for 2-hour segments before requiring a break of 15-30 minutes. Claimant should never have duties that require public interaction.

(*Id.* at 20-21).

Based on the record, the ALJ determined at step four that Plaintiff was unable to complete past relevant work as a leasing agent, banquet server, or financial report services sales agent. (Doc. No. 11-3 at 25). As to step five, however, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform other jobs available in the national economy. (*Id*. at 26). In support, the vocational expert identified three representative jobs based on Plaintiff's condition, including: (1) folding machine operator; (2) photocopy machine operator; and (3) routing clerk. (*Id.* at 26-27). Therefore, the ALJ determined Plaintiff has not been disabled as defined in the Social Security Act, since February 2, 2016, through the date of the opinion, based on the application for a period of disability and disability insurance benefits filed on December 6, 2016. (*Id*. at 27).

## VI.  ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income and disability insurance benefits. (Doc. No. 1). Plaintiff raises the

following issues for this Court's review:

> 1. Whether the ALJ improperly relied on vocational expert's testimony when it conflicted with the [Dictionary of Occupational Titles'] descriptions for the respective jobs the expert found Plaintiff capable of doing, considering the limitations posed by Plaintiff's ability to reach, reasoning level, and vision in her left eye, as set forth in the RFC.  (Doc. No. 17 at 2-3).

## VII.  DISCUSSION

### Plaintiff's Residual Functional Capacity and DOT descriptions

Plaintiff challenges the ALJ's decision at step 5 of the sequential disability analysis—as set forth above—that is the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national or regional economy, considering the claimant's RFC, age, education, and work experience.  *Supra* at 5.

Plaintiff contends that the ALJ erred by relying on the vocational expert's finding when the three jobs identified as potential jobs, did not comport with the limitations and findings set forth in the RFC. (Doc. No. 17 at 1-4).  While Plaintiff specifically challenges the jobs on the basis that each require "reaching" per the Dictionary of Occupational Titles' ("DOT") guidelines, her pro se brief includes other language in bold-font, which the Commissioner liberally construes as additional challenges, including "reasoning level," "motor coordination and vision," and "interactions with people." (*Id.*).  Addressing each issue, the Commissioner maintains that the ALJ properly relied on the vocational expert testimony and the findings were not inconsistent with the DOT job descriptions.

In evaluating a step 5 error involving a vocational expert's testimony, courts have required that ALJs "must ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary" to the DOT description.  *See Guiterrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016)(defining "apparent and obvious" conflict); *see also Massachi*, 486 F.3d 1149, 1152-1153 (9th Cir. 2007)(addressing for first time whether ALJ may rely on vocation expert's testimony regarding requirements of a job without first inquiring whether testimony conflicts with the DOT); *Lamear v. Berryhill*, 865 F.3d 1201 (9th Cir. 2017)(distinguishing *Guiterrez* and noting the analysis is fact dependent).  In other words, if there

is an obvious and apparent conflict between the vocational expert's testimony and the DOT description, the ALJ must inquire, or further probe to develop the apparent conflict. *Massachi*, 486 F.3d at 1152-53. However, this obligation that the ALJ further inquire of the vocational expert does not extend when there is no "apparent or obvious" conflict between the expert's testimony and the DOT. *Guiterrez*, 844 F.3d at 808 ("for a difference between the expert's testimony and the DOT's listing to be characterized as a conflict, it must be obvious or apparent."). This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected. . . . [T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one—like cashiering—less scrutiny is required by the ALJ. *Id.*

The DOT guidelines refer to "occupations," not specific jobs, and "includes 'the collective description' of 'numerous jobs and lists 'maximum requirements of the jobs as 'generally performed.'" *Id*. at 807 (citing SSR 00-4P, 2000 WL 1898704, at *2-3). The undersigned addresses each issue in turn.

<u>Overhead Reaching</u>

Plaintiff specifically contends that Folding Machine Operator, Photocopy Machine Operator, and Routing Clerk each require reaching, despite the RFC excluding any positions where Plaintiff must reach above shoulder level. (Doc. No. 17 at 2).

In response, the Commissioner agrees the descriptions in the DOT for Folding Machine Operator, Photocopy Machine Operator, and Routing Clerk contains "reaching," but argues the description does not specify whether it involves "reaching overhead." (Doc. No. 20 at 5). The Commissioner notes it was "reaching over head," not reaching in general, as the limitation set forth in Plaintiff's RFC. (Doc. No. 20 at 5). Pointing to *Gutierrez,* 844 F.3d at 808, the Commissioner argues the Ninth Circuit Court of Appeals has recognized that reaching connotes ability to extend one's hands and arms in every direction, but not every job requires the ability to reach overhead.

Here, the undersigned finds the Commissioner's argument persuasive. The ALJ's RFC

limited Plaintiff's ability to reach overhead, specifically finding that Plaintiff should "never reach above shoulder level."  Like *Gutierrez*, an issue present here is whether reaching above shoulder level "is such a common and obvious part of" the identified jobs, Folding Machine Operator, Photocopy Machine Operator, and Routing Clerk, so that the ALJ should have recognized a conflict and questioned the expert more closely before concluding that Plaintiff could work in these jobs.

Initially, a review of the transcript confirms the ALJ asked the vocational expert whether her testimony was consistent with the information in the DOT. (Doc.  No. 11-3 at 54).  The vocational expert answered in the affirmative.  (*Id.*).  The ALJ then further asked whether her opinion "was supplemented by [her] professional experience." (*Id.* at 55).  The vocational expert testified, "[y]es, regarding reaching above shoulder level, jobs that would not require binocular vision, use of computers or more than occasional reading and absence rate tolerances." (*Id.*).

The non-attorney representative for Plaintiff also asked the vocational expert questions about reaching. (*Id.*).

> EXAMINATION OF VOCATIONAL EXPERT:
>
> Q:  Do these three jobs that you identified, if we said that there was only occasional reaching bilaterally over the head or over the shoulder, would those jobs still be available?
>
> A. Occasional reaching over the shoulder level?
>
> Q. Yes, or any reaching at all.
>
> Q. Mm-hmm.
>
> A.  No. Those jobs will not be available.

(*Id*. at 55).  Thus, the record was developed regarding whether those position would be available to Plaintiff if she was required to generally reach as opposed to reach overhead.  The vocational expert testified that if Plaintiff was precluded from reaching at all then the three occupations would not be available to her.  However, the vocational expert's testimony specifically distinguished the "reaching overhead" requirement noting Plaintiff could still perform those three jobs.  And the ALJ specifically noted the vocational expert's testimony was supplemented by her professional experience regarding the limitations.  (Doc. No. 11-3 at 27).

9

As to whether the ALJ should have further inquired about reaching, the undersigned finds *Guiterrez* controls. There is no obvious and apparent conflict here. The DOT definition for Folding Machine Operator includes: "[t]ends machine that folds advertising literature, forms, letters, or other paper sheets: turns indicator knobs to adjust folding roller, side guides, and stops, according to specified size and number of folds. Starts machine and feeds paper sheets between folding rollers. Removes folded sheets. May place folded sheets into envelopes preparatory for mailing." 1991 WL 671754. A Photocopying Machine Operator performs tasks such as "tending duplicate machines to reproduce handwritten or typewritten matter, placing original copies on glass plates on machines, placing blank paper on loading trays, setting switches for the number of copies, pressing buttons to start machines which transfer images of original copies onto blank paper by photographic and static electricity process, cleaning and repairing machines, and receiving payment for duplicate copies." 1991 WL 671745. And Routing Clerk "[s]orts bundles, boxes, or lots of articles for delivery; Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slops, using charts. Places or stacks articles in bins designated according to route, driver, or type. May be designated according to workstation as Conveyor Belt Package Sorter (retail trade). May sort sacks of mail and be known as Mail Sorter." 1991 WL 672133.

While it is undisputed that the DOT definition for each of these three occupations provides for some "reaching," it does not specify that reaching over the shoulder is necessary for any of the three positions. A review of the descriptions themselves as set forth above show tasks mainly at the desk level, not reaching above the shoulder level. Similarly, other courts have found it is uncommon for Photocopying Machine Operators and Routing Clerks to have to reach above shoulder level or overhead. *See e.g. Lisa S. v. Berryhill*, 2019 WL 6655257, *3 (C.D. Cal. Jan. 25, 2019)(noting it is uncommon for Photocopying Machine Operators to reach overhead); *Ledesma v. Berryhill*, 2017 WL 2347181 (C.D. Cal. May 30, 2017)(noting Routing Clerks do not reach overhead). Thus, the ALJ did not have to ask the vocational expert any additional follow-up questions and correctly relied on the expert's testimony with regard to the reaching requirement.

Reasoning Level

Next, Plaintiff submits that each occupation requires a Reasoning Level 2 and further requires that she be able to "carry out detailed written or oral instructions." (Doc. No. 17 at 3-4). Plaintiff does not dispute that all three occupations have a Reasoning Level 2, but instead asserts the requirements she "carry out detailed written or oral instructions" contradict her RFC finding. (*Id.*). Opposing the argument, the Commissioner notes that the Reasoning Level 2 comports with the ALJ's finding that Plaintiff can perform "duties that are simple, repetitive, and routine," and "should never be excepted to exercise independent judgment," and "[h]er duties must be consistently the same with little or no change." (Doc. No. 20 at 7-8). The Commissioner cites to *Hernandez v. Berryhill*, 707 F. App'x 456, 458-59 (9th Cir. 2017)(unpublished) affirming that Reasoning Level 2 positions are consistent with an RFC finding for simple, repetitive tasks. (*Id.* at 7).

The ALJ's RFC finding noted Plaintiff can complete duties that are "simple, repetitive, and routine." (Doc. No. 11-3 at 21). Plaintiff should "never be expected to exercise independent judgment regarding the nature of the job duties; the responsibilities should be consistent and never change; and she can concentrate and persist for 2-hour segments before requiring a 15-30 minute break." (*Id.*).

As the Commissioner correctly argues all positions referenced by the vocational expert are Reasoning Level 2 positions requiring individuals to "apply commonsense understanding to carry out detailed *but uninvolved* written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *See* 1991 WL 671754 (folding machine operator); 1991 WL 671745 (photo copying machine operator); 1991 WL 772133 (routing clerk).

Here, there is no conflict between these occupations requiring a Reasoning Level 2 with Plaintiff's RFC permitting simple, routine tasks, with commonsense sense understanding to carry out detailed, but uninvolved instructions. *See Hernandez*, 707 F. App'x at 458 (citing *Abrew v. Astrue*, 303 F. App'x 565, 569 (9th Cir. 2008)(unpublished); *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010)(finding no conflict between ALJ's 5-step determination that claimant could complete only simple tasks and the vocational expert's testimony that permitted Reasoning Level

2 occupations).   Because the ALJ's RFC was supported by substantial evidence and the vocation expert testified that her answers were consistent with the DOT, the ALJ's reliance on the vocational expert's testimony was proper.

### Vision and Motor Coordination

Plaintiff uses bold-color font for the terms "near acuity" and "motor coordination" presumably as a basis for error.  (Doc. No. 17 at 3).   Liberally construing the pro se brief, the Commissioner responds "in the abundance of caution" arguing that there is no conflict between the RFC finding as to vision and motor coordination and the three identified jobs.  (Doc. No. 20 at 8-9).

Indeed, Plaintiff provides no argument in her opening brief as to how the ALJ's reliance on the vocational expert's testimony was erroneous as it pertained to her vision or motor coordination.  (*See generally* Doc. No. 17).   The ALJ's RFC specifically noted Plaintiff's inability to see out of the left eye.  (Doc. No. 11-3 at 20; 53-54).   And, the RFC excluded binocular vision, near acuity, far acuity, depth perception, or color discrimination with the left eye.  (*Id.*).   Despite these conditions, the vocational expert testified that Plaintiff had three viable options for employment and that her testimony was consistent with the DOT and based on her experience.  (*Id.* at 54-55).   The record shows no apparent conflict between the job and the vision or motor coordination skills.   The ALJ was not required to question the vocational expert any more than the record reflects and properly relied on the vocational expert's testimony.

### Supervisory Instruction

Like the above, Plaintiff bolds the term "people" in the context of supervisory or instructions.  (Doc. No. 17 at 3).   Responding in the abundance of caution, the Commissioner argues the ALJ did not limit interaction with supervisors, only the public.  (Doc. No. 20 at 8). Thus, the Commissioner maintains the vocational expert's testimony did not conflict with the DOT.  (*Id.*).

Again, Plaintiff posits no specific argument regarding the requirement she take instruction from supervisors.  (*See generally* Doc. No. 17 at 3).   The Commissioner correctly notes that the RFC did not limit interactions with supervisors and instead only limited interaction with the

public. (Doc. No. 11-3 at 20-21; 53-54). The record shows no apparent conflict between the job and interactions with supervisors. The ALJ was not required to question the vocational expert any more than the record reflects and properly relied on the vocational expert's testimony.

In closing, the RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). If the hypothetical posed to the vocation expert contains all the limitations the ALJ found credible and supported by substantial evidence in the record, then the ALJ's reliance on testimony the vocational expert gave in response is proper. (*Id.*) (internal citations omitted). An ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Plaintiff does not challenge any particular portion of the RFC, but instead challenges the DOT description of the identified jobs based on the RFC. For the reasons set forth above, the Court finds no obvious and apparent error that required the ALJ to further question the vocational expert as it pertained to the overhead reaching, vision and motor skills, or supervisory interactions. Regarding the Reasoning Level, two of the identified occupations had a Reason Level 2 that comported with Plaintiff's abilities. Thus, referring to a Routing Clerk with a Reasoning Level 3 was harmless error.

## VIII. CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed above, the ALJ properly considered the vocational expert's testimony. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

The Clerk of Court randomly assign this case to a district court judge.

It is further **RECOMMENDED**:

1. The district court AFFIRM the decision of the Commissioner of Social Security for the reasons set forth above.

2. The district court direct the Clerk to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    June 30, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE